UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| RAYMOND JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 19-272-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | **MEMORANDUM OPINION** |
| Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the cross-motions for summary judgment filed by Plaintiff Raymond Jackson and Defendant Andrew Saul, Commissioner of Social Security. [Record Nos. 13 and 15] Jackson contends that the administrative law judge ("ALJ") assigned to his case erred by denying his claim for Supplemental Security Income ("SSI"). [Record No. 13] He asks the Court to reverse the ALJ's decision and remand the matter to the ALJ with the instructions that he be awarded SSI. [Record No. 13-1, p. 15] However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 15] For the reasons that follow, the Court will grant the Commissioner's motion and deny the relief sought by Jackson.

## I. Procedural History

Jackson filed an application for SSI under Title XVI of the Social Security Act ("the Act") on April 17, 2014.[1] [Administrative Transcript (Record No. 9-1), hereafter "Tr.", 299-

---

[1]    The 2014 "Application Summary for Supplemental Security Income" indicates that it was filed on May 8, 2014. [TR. 299] The parties insist, however, that April 17, 2014, is the

307] The application alleged a disability onset date of July 1, 1999.[2] [*Id.*] After the claim was initially denied and denied upon reconsideration, ALJ J. Elaine Burke held a hearing on the application on February 4, 2016, and denied the claim in a written decision dated March 23, 2016. [Tr. 161-176]  The Appeals Council vacated this decision and remanded the case on July 3, 2017, for further proceedings. [Tr. 183-85] ALJ Susan Brock then conducted a second hearing on January 18, 2018, but again denied Jackson's claim on September 4, 2018. [Tr. 17-32] The Appeals Council denied Jackson's request for review of this proceeding on September 7, 2019, making the second ALJ's decision final and ripe for judicial review under 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a). [Tr. 6-8]

## II. Background

Jackson was 56 years old at the time of ALJ Brock's decision. [Tr. 17, 54, 299] He has a General Equivalency Diploma but no prior work experience since he served as a mechanic in 1996. [Tr. 319, 333] Jackson's application indicates that he has been disabled since 1999, but his reported physical ailments stem, in part, from a 1997 incident where he was shot multiple times (once in the head) and run over by a car. [Tr. 54-55] That incident, as well as two family suicides, have significantly impacted his mental health. [Tr. 659]

---

applicable date of filing, and the relevant ALJ opinions similarly provide this date. [TR. 20, 176; Record Nos. 13-1, p. 1 and 15, p. 1] Inasmuch as the parties are in agreement and the application itself is not filed in the record to indicate otherwise, the Court will proceed with the understanding that the application was filed on April 17, 2014.

[2]     Even though Jackson alleges that July 1999 was the onset of disability, a claimant cannot receive benefits for periods of time earlier than the month after the date he applies for SSI. 20 C.F.R. § 416.335. This makes April 17, 2014, the effective onset date for review of Jackson's condition.

Dr. Robert Hoskins began treating Jackson in 2008 and has consistently treated the plaintiff since 2012. [Tr. 498-582, 671-709, 716-729] When Jackson "reestablished care" with Hoskins in October 2012, he noted that he was experiencing lower back pain. [Tr. 594] Since the effective onset date of Jackson's disability in April 2014, Hoskins observed that Jackson suffered from, *inter alia*, malaise and fatigue, anxiety, insomnia, history of paranoia, post-traumatic stress disorder ("PTSD"), hypertension, rectal bleeding, chronic right elbow pain, post-traumatic arthritis of the knees and ankles,  previous internal fixation of the right elbow, lumbar/lower back pain, and chronic headaches. [Tr. 502, 504, 508, 517, 566] Dr. Hoskins also noted on January 19, 2015, that Jackson suffered from crepitus in his knee, was slow standing up, and walked with a limp. [Tr. 516-17]

In a February 2, 2016 Medical Source Statement, Hoskins indicated that Jackson could not sit for longer than four hours during an eight-hour workday, could stand and walk for less than one hour without interruption, and could rarely lift and carry 11-20 pounds during a workday. [Tr. 590] This Medical Source Statement also concluded that Jackson's severe mental and emotional impairments frequently interfered with his ability to concentrate. [Tr. 591] The physician estimated that the combined physical and psychological impairments resulted in the claimant's inability to complete more than six workdays per month. [*Id.*] During 2017, Hoskins routinely concluded that the plaintiff had normal reflexes, no extremity or back deformation, and intact cranial nerves. [Tr. 681, 685, 684, 692-92, 696-97]

A June 17, 2017, MRI of the plaintiff's lower back revealed three levels of bulging discs, an annular tear at one level, and moderate neural foraminal stenosis at two levels. [Tr. 708] This contrasted with an earlier 2011 MRI that revealed "[n]o acute or significant lumbar osseus abnormality, unremarkable examination." [Tr. 550] The plaintiff saw Dr. Munawar

- 3 -

Siddiqi at the Kentucky Pain and Spine Center in July 2017 to discuss pain management in light of the June 2017 MRI. Siddiqi noted no lower spinal deformities and observed that Jackson had a normal gait, intact sensation, and no sensory motor loss. [Tr. 756] He indicated that the plaintiff had a limited range of motion in the lumbar/lower back region. [*Id.*] Further, he wrote that Jackson had coherent thought processes, higher cognitive functions, and intact memory for a man of his age. [Tr. 757] Jackson could understand proverbs and perform simple calculations. [*Id.*]

Jackson also saw medical professionals to specifically treat his headaches, which likely stemmed from head injuries sustained in 1997. Hoskins had initially prescribed Fioricet in 2014 and 2015 to alleviate the pain. [Tr. 513, 515, 518, 521, 577, 580] Jackson was referred to Dr. Amjad Bukhari in August 2017 for further evaluation. [Tr. 711] Bukhari noted that the patient had appropriate memory, attention span, concentration, and fund of knowledge. [Tr. 712] He concluded that Jackson had "intractable" chronic mixed migraines without aura and "chronic mixed headache syndrome." [Tr. 713] Bukhari also found that Jackson had normal reflexes, muscle strength, muscle bulk, muscle tone, and coordination. [Tr. 712]

Dr. Jack Reed reviewed Jackson's medical records in December 2014 for the state without conducting a formal consultative examination. [Tr. 140-54] Reed found evidence of nonsevere hypertension and gastrointestinal, muscle, ligament and fascia disorders. [Tr. 154]

Jackson also participated in physical and psychological examinations related to the application for SSI benefits at issue in this case. Dr. Barry Burchett performed a physical consultative evaluation on August 23, 2017. [Tr. 645] He noted that Jackson used a cane to walk but had a normal gait without the cane. [Tr. 646] When examining the lower back, spine, and knees, Burchett noted no evidence of muscle spasm, tenderness, or crepitus. [Tr. 646-47]

Dr. Burchett found that the claimant had a normal range of shoulder, neck, and knee motion as well as normal strength and sensation in his extremities.  [Tr. 648-50] Burchett observed that, although there was "limitation of active lumbar flexion anteriorly," the patient was able to stand on one foot at a time without difficulty.  [Tr. 648]  Burchett also provided a Medical Source Statement indicating that: (1) Jackson could continuously lift or carry up to 20 pounds but could not carry or lift objects over 20 pounds; (2) he could sit, walk, or stand for two hours without interruption; (3) he could sit for up to eight hours, stand for up to four hours, and walk for up to two hours in a given workday; (4) he did not need a cane to walk; and (5) he should "never" reach overhead, or climb ladders or scaffolds, stoop, kneel, crouch or crawl.  [Tr. 651-56] Burchett did not cohesively explain why the plaintiff was limited in these regards, but there is an indication that the decreased lumbar flexion as well as the patient's medical history resulted in these findings.  [Tr. 652-54]

Dr. Crystal Sahner performed a psychological consultative examination on August 24, 2017.  [Tr. 658] Jackson reported that he had problems with anxiety, panic, depression, PTSD, paranoia, and "voices" while explaining the traumatic roots of his mental illnesses.  [Tr. 659] As she administered various tests, Sahner noted that Jackson required a break because he could not concentrate consistently for the time required.  [Tr. 660]  Dr. Sahner indicated that his IQ range (66-74) spanned from the high end of "extremely low" to the low end of "borderline" mental retardation.  [Id.]  Sahner concluded that Jackson could understand, remember, and carry out simple instructions and "make judgments based on simple work-related decisions." [Tr. 664]  However, Jackson had a seriously limited ability to understand, remember, and carry out complex instructions and "make judgments based on complex work-related decisions." [Id.]  Additionally, Dr. Sahner concluded that Jackson's "adaptive skills of living" were not

- 5 -

"significantly lower than peers" because he had been married and employed at one time, possessed a driver's license in the past, and was generally able to live on his own.  [Tr. 662]

As noted, ALJ Brock conducted an administrative hearing on the plaintiff's SSI application on January 18, 2018.  [Tr. 82] During the hearing, Jackson testified that he hurt "24/7," experiencing extreme social anxiety, headaches, and other pains in the skull, legs, and hips.  [Tr. 94] He also stated that he had significant problems concentrating and remembering to the extent that he could have a hammer and nail in hand without understanding why he picked them up.  [Tr. 103] And Jackson also testified to sleeping throughout most days and hearing voices.  [Tr. 104-05]

After reviewing the record, the ALJ found that Jackson had several severe impairments for the purposes of 20 C.F.R. § 416.920(c), including degenerative disc disease, degenerative joint disease, cervicalgia, history of substance abuse, anxiety, and borderline intellectual functioning.  [Tr. 23]  However, she concluded that these impairments, individually or in the aggregate, did not meet or medically equal the severity of the listed impairments of in 20 CFR Part 404, Subpart P, Appendix 1.  [Tr. 23]  ALJ Brock found that:

> [t]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he may frequently stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds.  He may frequently reach, handle, and finger, with the right upper extremity.  He can tolerate frequent exposure to unprotected heights or frequent operation of hazardous machinery.  Due to his mental impairments he is limited to simple, routine, and repetitive tasks with occasional contact with coworkers and supervisors, but no contact with the general public.  He can tolerate occasional workplace changes, but he should avoid work involving production rates or quota requirements.

[Tr. 25] The ALJ indicated that this residual functional capacity ("RFC") would allow Jackson to perform medium-level unskilled jobs that exist in significant numbers in the national economy, such as industrial cleaner, laundry laborer, and machine cleaner.  [Tr. 31-32]  ALJ

Brock determined that the claimant had not been under a disability since April 17, 2014, for the purposes of the Act. [Tr. 32]

### III. Standard of Review

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); 20 C.F.R. § 416.920(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 416.920(e). If he can, he is not disabled. 20 C.F.R. §416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## IV.  Discussion

Jackson offers three arguments in support of his motion. They are, that: (1) ALJ Brock misapplied the "treating physician rule" and other related rules concerning the weight given to medical opinion evidence; (2) the ALJ's decision was not supported by substantial evidence; and (3) the ALJ failed to consider the combined effect of how Jackson's ailments on his RFC. [Record No. 13-1, pp. 8-14] The Commissioner's motion explicitly contends that the ALJ's decision is supported by substantial evidence, but he addresses the plaintiff's other arguments as well. [Record No. 15, 8-11]

### A.  The ALJ Did Not Err In Weighing The Opinion Evidence.

Jackson's primary argument is that ALJ Brock failed to give controlling weight to the medical opinions of Hoskins, which he contends were supported by the opinions of other medical professionals. [*Id.* at pp. 8-12] He also believes that the ALJ erred by giving the

opinion of Reed, a consultative physician who did not examine the claimant, as much weight as that of Burchett, a consultative physician who did evaluate Jackson.  [*Id.* at p. 12]

Title 20 of the Code of Federal Regulations, section 416.927, prescribes the standards for evaluating opinion evidence concerning SSI claims, which, like that of Jackson, were filed prior to March 27, 2017.  Under this section, a "treating source" or "treating physician" means a claimant's "own acceptable medical source who provides [him], or has provided [him], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [him]."  20 C.F.R. § 416.927(a)(2).  The SSA generally gives more weight to the medical opinions of "treating source" physicians because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  20 C.F.R. § 416.927(c)(2); *Rogers*, 486 F.3d at 242.  This is known as the "treating physician rule."

"[I]f the opinion of the treating physician as to the nature and severity of a claimant's conditions is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record,' then it will be accorded controlling weight."  *Rogers*, 486 F.3d at 242 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  If a treating physician's opinion does not meet these criteria and does not control, the ALJ must determine how much weight to give it based on "the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors."  *Id.*  (citation omitted); *see also* 20 C.F.R. 416.927(c)(2)-(6).  Whenever an ALJ discounts the opinion of a treating physician, she must provide "good reasons" for

doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (July 2, 1996); *see also* 20 C.F.R. § 416.927(c)(2); *Rogers* 486 F.3d at 242.

"[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). However, "[i]f [a] treating-source opinion is deemed not to control, the [SSA] may review other opinions, inquiring into treatment dynamics, specialization saliency, evidentiary consistency, and supportability." *Burton v. Comm'r of Soc. Sec.*, 690 F. App'x 398, 402 (6th Cir. 2017) (citing *Gayheart*, 710 F.3d at 376 (citation omitted)); *see also* 20 C.F.R. § 416.927(c). ALJs must generally use these standards to weigh the evidence of state and federal medical consultants who are solely engaged for the purposes of assisting the administrative evaluation of an application because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1); *see also* 20 C.F.R. § 416.927(e) (explaining that while this is generally true, an ALJ need not discuss the weight accorded to a prior administrative medical finding when a treating-physician's opinion controls).

ALJ Brock did not err by failing to give controlling weight to Hoskins' opinions. The ALJ explained her decision to discount Hoskins' physical impairments opinions for the following reasons:

> The undersigned gives little weight to Robert Hoskins, M.D., the claimant's primary care provider[]. Dr. Hoskins opined the claimant could sit for 4 hours a day and stand/walk for less than an hour. He further opined the claimant could occasionally lift up to 10 pounds and rarely lift up to 20 pounds. While a treating provider can be afforded controlling weight, the opinion must not be contradicted by substantial evidence in the record. Here, the claimant has only limited objective findings on lumbar MRI and no studies of the knees, shoulders,

> or neck.  While Dr. Hoskins' early records document knee and shoulder
> problems, the more recent records primarily discuss only lower back pain and
> limited lumbar motion.  Dr. Hoskins has not recommended any aggressive
> treatment and has been content to treat the claimant conservatively for years
> without any recommendation for surgery or ordering of additional tests.  In sum,
> there is insufficient medical evidence to support a need for light exertional work
> or such limited exertional activities.

[Tr. 29]

ALJ Brock provided several "good reasons" to discount Hoskins' opinions.  While Hoskins may not have directly employed any methods that were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," his failure to pursue more aggressive treatment for the patient's back pain does question the doctor's Medical Source Statement findings given his knowledge of the impairment.  The 2011 MRI (performed prior to Jackson's return to Hoskins' care) did not reveal the source of the claimant's lower back/lumbar pain, but its ostensible purpose was to investigate the pain.  Additionally, Jackson reported back problems to Hoskins when he reestablished the doctor as his primary care physician in 2012.  The evidence suggests Hoskins was aware that Jackson had progressively worsening lower back problems for more than six years prior to ALJ Brock's January 2018 hearing.  However, there is no indication of that he was sufficiently concerned to order more aggressive treatment options.

Further, ALJ Brock observed that Hoskins did not sufficiently account for potential shoulder, knee, or neck functionality when formulating his opinions regarding the ability to lift or carry items.  These areas of the body are relevant to lifting and carrying, and there is evidence that suggests knee function had improved over time because Burchett reported no crepitus in 2017 while stating that Jackson did not need a cane to walk.  And to the extent the plaintiff contends that Burchett's lifting and carrying opinions support those of Hoskins, the

Court notes that the ALJ *also* discounted these opinions because they failed to account for Burchett's own findings that Jackson had normal range of shoulder, neck, and knee motion as well as normal strength and sensation in his extremities.  [Tr. 29]

Jackson similarly argues that it was inappropriate to discount Hoskins' opinions concerning psychological health.  The ALJ determined that "[t]he claimant has sought limited professional mental health treatment[,] and Dr. Hoskins has been content to treat the claimant routinely."  [Tr. 30]  The ALJ continued: "Records from [Hoskins'] facility often noted that the claimant was friendly with intact memory, judgment, mood, affect, and insight . . . . [Jackson] has not required any overnight hospitalizations."  [*Id.*]  Thus, ALJ Brock concluded that there was no evidence to suggest that mental impairments would cause the defendant to be unable to complete more than six days of work per month, even when considered alongside his physical injuries.  [*Id.*]

Again, the ALJ did not err in discounting Hoskins' opinions.  As was the case with her analysis of Hoskins' treatment of Jackson's back problems, she based the low weight of the doctor's opinion, in part, on the fact that he did not take extensive action for the patient's psychological problems despite their longevity.  Additionally, there is evidence from Siddiqi and Bukhari in 2017 that Jackson was able to concentrate and had normal cognitive functions. There was no evidence of overnight hospitalizations due to mental or emotional problems. Moreover, ALJ Brock gave partial weight to Sahner's conclusions regarding anxiety and concentration, opinions that echoed Hoskins' concerns.  [Tr. 30] This point is reflected in the portion of the RFC finding that reads: "Due to his mental impairments [Jackson] is limited to simple, routine, and repetitive tasks with occasional contact with coworkers and supervisors, but no contact with the general public.  He can tolerate occasional workplace changes, but he

should avoid work involving production rates or quota requirements." [Tr. 25] Jackson no doubt suffered from considerable mental and emotional problems, but the ALJ accounted for them while qualifying the weight placed on Hoskins' opinions where they were not substantially supported by other evidence in the record.

Finally, the ALJ did not err by giving Reed and Burchett's opinions similar weight. Neither doctor was a "treating source" because both were consulted for the purposes of conducting analyses relating to Jackson's SSI claim. As indicated above, there are a broad range of considerations for weighing the opinions of nontreating physicians who are purely consulted for the purposes of evaluating a SSI claim. It is true that nontreating examining physicians' opinions are "generally" given more weight than those of nonexamining physicians, but this is only one factor considered by an ALJ when determining how much weight to give a medical opinion. *See* 20 C.F.R. § 416.927(c). And "it is not a *per se* error of law . . . for the ALJ to credit a nonexamining source over a nontreating [but examining] source." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). Instead, "[a]ny record opinion . . . may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Id.* (citing 20 C.F.R. §§ 404.1527, 416.927; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)).

Here, the ALJ discounted Burchett's opinions regarding sitting, standing, lifting, carrying, stooping, kneeling, crawling, crouching, and climbing because they were not supported by the record or that doctor's own observations about the functionality of the plaintiff's neck, shoulders, knees, and extremities. [Tr. 29] The regulations contemplate discounting an opinion for such reasons even if the result is that an ALJ gives a nontreating

examining physician's opinion similar weight to that of a nontreating nonexamining source like Reed. *See* 20 C.F.R. §§ 416.913a and 416.927(c).

ALJ Brock appropriately gave partial weight to Reed's opinion because some of his 2014 findings did not accord with those of later medical records produced since the effective onset date. [Tr. 28-29] For example, he did not adequately account for lumbar limitations, which appear to have worsened after 2014. [Tr. 29] That said, his opinion was given some weight because some of his findings regarding nonsevere hypertension, gastrointestinal, muscle, ligament and fascia disorders comported with later evidence. [Tr. 28-29] The same was true of his failure to find significant problems with Jacksons' extremities. [Tr. 29] Again, this kind of analysis is contemplated by the regulations. *See* 20 C.F.R. §§ 416.913a and 416.927(c).

In summary, ALJ Brock did not err when weighing any of the opinion evidence in this case. She appropriately discounted the opinion of Hoskins even though he was the treating physician. Additionally, it was not error to give similar weight to the opinions of Burchett and Reed given her justifications for doing so.

### B. Substantial Evidence Supports The ALJ's Decision.

Jackson next argues that the ALJ erred by determining that he had a medium work RFC because this ruling is not supported by substantial evidence.[3] Jackson focuses on the lifting/carrying analyses. He contends that none of the relevant evidence supports the idea that the he can lift and carry up to 50 pounds and frequently lift and carry over 25 pounds. [Record

---

[3]     "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

No. 13-1, pp. 12-13]  He does not argue that the ALJ's findings concerning psychological impairments are unsupported by substantial evidence.

The Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  "As long as the ALJ cited substantial, legitimate evidence to support [her] factual conclusions, [the Court is] not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'"  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Bass*, 499 F.3d at 509).

Here, reasonable minds might accept the ALJ's conclusion regarding the medium work RFC.  ALJ Brock provided several reasons that justify her conclusion that the plaintiff could perform medium work.  First, objective medical evidence supported this conclusion.  She noted that only pain medications had been prescribed to treat knee, neck, back, and shoulder pain since 2013.  [Tr. 27]  She placed significant weight on the 2017 MRI-related findings regarding bulging discs and the annular tear but stated that the most recent medical evaluations indicated that these problems were the only significant physical impairments.  [*Id.*]  She cited the recent 2017 opinions of multiple examining physicians, including Bukhari, Siddiqi, and Hoskins, for her conclusion that Jackson's extremities had normal strength, sensation, and reflexes.  [*Id.*]  And as noted, she discussed Burchett's objective findings regarding the functionality of the plaintiff's neck, shoulders, knees, and extremities.  [Tr. 29]  ALJ Brock's RFC reasoning and citations comport with substantial evidence pertaining to physical impairments.

- 15 -

Second, she appropriately rejected opinions that implied that Jackson could not perform medium work because they were not supported by the objective medical evidence.  As indicated above, ALJ Brock offered sufficient reasons for discounting the opinions of Hoskins and Burchett regarding the plaintiff's ability to lift and carry objects.  These physicians determined that Jackson could carry up to 20 pounds, a finding which supports a RFC for light, rather than medium, work.  *See* 20 C.F.R. § 416.967(b).  The ALJ found that the evidence regarding normal strength and range of motion discredited the light work evaluations.  [Tr. 29]  And as noted, her decision cites objective evidence from the actual evaluations of Hoskins, Burchett, Siddiqi, and Bukhari to support this point.  [Tr. 27, 29]  Her reasons for discounting the light work opinions weigh in favor of her RFC determination that Jackson could perform medium work.

Relatedly, ALJ Brock appropriately discounted Jackson's hearing testimony regarding his physical impairments.  She concluded that the plaintiff's statements about the "intensity, persistence[,] and limiting effects of [] symptoms are not entirely consistent" with the evidence in the record.  [Tr. 26]  "A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record."  *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 434 (6th Cir. 2012) (citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004)).  Here, Jackson's statements about "24/7" pain to areas of the body other than the lower back did not align with the most recent evidence in the record.  Accordingly, the ALJ reasonably placed little weight on his testimony.

There is significant objective medical evidence in the record to support ALJ Brock's medium work RFC.  The ALJ appropriately discounted the opinions of Hoskins and Burchett regarding capacity to perform light work and similarly rejected the plaintiff's testimony insofar

as it indicated that he could not perform medium work.  Thus, the ALJ's determination is supported by substantial evidence in the record.

## C.  The ALJ Sufficiently Considered The Combined Effect Of Jackson's Impairments.

Jackson also argues that ALJ Brock failed to consider the combined effect of his impairments when formulating the medium work RFC.  Title 42 of the United States Code, section 423(d), requires the SSA to consider "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity" to constitute "disabled" status under the Act.  Jackson contends that the ALJ failed to consider whether his physical and mental limitations, in the aggregate, prevented him from working in the national economy.  [Record No. 13-1, pp. 13-14]

But as the Commissioner points out, the ALJ *did* consider the combined effect of Jackson's physical and mental impairments.  [Record No. 15, p. 11] This is most clearly demonstrated by the RFC itself.  ALJ Brock considered the significant physical impairments she believed were supported by the record, *i.e.*, complications from the lower back injury, to determine that Jackson could perform medium work.  But she qualified the medium work RFC by finding that mental impairments supported significant limitations on what types of work he could perform ("simple, routine, and repetitive tasks") and the frequency of interactions with other workers while performing such tasks ("occasional contact with supervisors and coworkers [] but no contact with the general public").  In doing so, she clearly accounted for the combined effect of the claimant's physical and mental impairments.  Additionally, she explicitly rejected the idea that a "combination of mental and physical impairments would cause the claimant to miss more than six days of work per month."  [Tr. 30] The ALJ also

- 17 -

generally stated that she considered "the entire record" and "the totality of the lay and medical evidence" to determine the RFC.  [Tr. 25, 31]

This is not to say that ALJ Brock did not consider some impairments individually.  But "the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to a 'combination of impairments' in deciding that [the claimant] did not meet the 'listings.'"  *Gooch v. Sec. of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  Where, as here, the ALJ plainly contemplated the interrelation of impairments, the fact that other portions of the decision discuss ailments individually does not indicate that the ALJ failed to consider their combined effect.

## V.  Conclusion

The ALJ did not err when weighing the opinion evidence in the record.  Additionally, her RFC determination is supported by substantial evidence, and she considered the combined effect of impairments when formulating the RFC.  Accordingly, it is hereby

**ORDERED** as follows:

1.     Defendant Commissioner of Social Security Andrew Saul's motion for summary judgment [Record No. 15] is **GRANTED**.

2.     Plaintiff Raymond Jackson's motion for summary judgment [Record No. 13] is **DENIED**.

3.     The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

Dated: June 5, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky